JOHN DOE, *ex dem.*, PHILIP P. CLAYTON, NELSON TIFT, *et al.*, plaintiffs in error, *vs.* RICHARD ROE, *Cas. Ejector*, and SAMUEL PALFUS, defendants in error.

1. Where a decree, for a specific performance, is a link in a chain of title, it must be considered as if it were a deed from the party required to make a deed.
2. When the Court below is dissatisfied with a verdict, and grants a new trial, and no principle of law is thereby violated, and the testimony leaves important points in doubt, which doubts can be removed on another trial, this Court will not disturb the ruling.

Ejectment. Motion for new trial. Decided by Judge IRWIN. Dougherty Superior Court. December Adjourned Term, 1866.

This was an action of ejectment, for a quarter of an acre of land, on Broad street, Albany, to-wit: lot number twenty, being part of original land lot number three hundred and twenty-three, in the first section of Dougherty county, on the several demises of Philip P. Clayton, Peter W. Turthy, as administrator of Augustus R. Rugg, James H. Bishop and Curtis R. Parsons, partners under the style of Bishop & Parsons, and Nelson Tift.

The tenant, Palfus, was admitted to be in possession of said lot at the commencement of the suit. John Jackson was made a party defendant by consent.

Plaintiff introduced PETER J. STROZIER, who testified that he was present at the sheriff's sale of the premises, under *fi. fa.* of John Jackson. The sale was also under the *fi. fa.* of Bishop & Parsons. Rugg and Jackson were present at the sale, which was in July, 1842:

EDWARD RICHARDSON testified; As agent for Bishop & Parsons, he called on A. K. Rugg, their attorney, soon after the sale of the lot, and he told witness Bishop & Parsons could have the lot; witness told Rugg he would take the lot and pay the money. Rugg died a few weeks after without making the title.

Plaintiff also read in evidence the following documents: the original bill, answer and decree in the cause of Bishop &

Parsons vs. Joseph B. Shores, administrator of Rugg, and the original claim papers at the administrator's sale.

These were objected to by defendant's attorneys, but the objection was overruled.

Plaintiff read in evidence five deeds to said land lot, tracing title from the State to Nelson Tift, as admitted by the defendant. (By consent, these deeds are not described in the record.)

Plaintiff closed.

Defendant read in evidence a deed from George W. Collier, sheriff, to John Jackson, for said lot. The order requiring the sheriff to make this deed was recorded 4th August, 1860, the deed was dated 3d February, 1843, and was recorded 13th December, 1852, and its consideration was ten dollars.

Defendant introduced JOSEPH THORN, who swore that A. J. Swinney went into possession of the lot directly after the fire in 1849 or 1850, and when he went out Palfus went in, and remained in possession till the beginning of this suit.

Defendant also read in evidence an agreement of A. J. Swinney, dated Albany, Ga., 19th June, 1851, acknowledging a renting from defendant in 1849 or 1850, and agreeing to rent for a certain length of time thereafter.

Swinney was said to be intoxicated at the time of the trial, and was not introduced as a witness.

Plaintiff introduced an agreement of A. J. Swinney. It was in substance a lease from Peter J. Strozier, attorney of Young P. Outlaw, and Richard K. Hines, Jr., attorney for Bishop & Parsons, (dated 8th January, 1851,) of said lot until 1st January, 1853.

Plaintiff read in evidence a deed from Green Tinsley, sheriff, to Nelson Tift, dated 5th July, 1842, which had not been recorded, reciting that the land was sold as the property of Clayton.

The jury found for the plaintiff the premises in dispute.

During the term, the defendant moved for a new trial on the grounds—

1st. That the Court erred in allowing the plaintiff to read to the jury the bill of Bishop & Parsons, against Shores, administrator of Augustus R. Rugg, deceased, and the answer

Doe, *ex dem.*, &c., *vs.* Roe, *cas. ejector*, &c.

of said administrator, as evidence against the defendant in this issue as to the truth of such allegation, as also the recital in the decree in said case (other than those decreeing conveyances from the estate of Rugg to Bishop & Parsons.)

2d. Because the Court erred in charging the jury that the recitals in said decree that said lot was purchased by said Rugg, in his lifetime, as agent and attorney of Bishop & Parsons, under their instructions, and that said Rugg intended to take the title in their names, but from some accident or mistake the title was made in the name of Rugg, was evidence, whereas his title showed he had no interest in or right to said lot.

3d. Because the Court erred in charging the jury that when the possession of defendant was founded upon or commenced in a fraud, the statute of limitations would not run in his favor, or, in other words, that such a possession as commenced or was founded on a title acquired in and by fraud could not ripen into a statutory title.

4th. Because the Court refused to charge as requested, that if defendant purchased the lot at sheriff's sale, in July, 1843, and took the sheriff's deed therefor, and took possession under said title, and held possession under a claim of right as his property and against the whole world, either by himself or his tenants, for seven years, openly, continuously and adversely, that his title was good as a statutory title, barring the plaintiff's right to recover, though such sale did not pass the real title, at the time of the purchase:

And lastly, because the verdict was contrary to law, contrary to the evidence and the weight of the evidence.

The record does not show what was the charge of the Court, and the Judge certifies that the statements of the motion for a new trial are incorrect. He says he charged that a decree was evidence of the recitals therein between the parties thereto, as though they were contained in a deed and binding on the parties in the same way, and when relied upon as a link in a chain of title, it must be connected as though it was a deed.

He says the Court further charged, that "fraud vitiates all

contracts, and if proven that possession was obtained by fraud, the statute would not run in favor of the perpetrator of the fraud, so as to ripen into a statutory title, but that fraud would not be presumed, but must be proven like any other fact, and that the taking of the second deed at sheriff's sale by Jackson was not of itself a fraud."

He says he further charged the jury that before the passage of the act of 1852, possession, to be the foundation of a statutory title, must be public, continuous, exclusive, uninterrupted and peaceable, and under claim of right, and that if the jury believed that the defendant, either by himself or tenant, had so occupied the land in dispute for seven years, they ought to find for the defendant.

At this point, attorney for defendant verbally requested the Court to charge in substance what is set forth in said motion for new trial. The Court did not charge in the language requested, but charged the jury that if they believed from the evidence that the defendant, by himself or tenant, had been in the public, continuous, exclusive, uninterrupted and peaceable possession of the lot in dispute under claim and color of title for seven years immediately preceding the commencement of this suit, they ought to find for the defendant.

In all this the Judge thought he was correct, but having failed to charge what constituted a color of title and adverse possession under the act of 1852, and the effect thereof, and thinking that under the circumstances this omission may have influenced the jury, he granted a new trial.

To this order of a new trial the plaintiff in error excepted, and now assigns it as error.

Hines & Hobbs, P. J. Strozier, for plaintiff in error.

Richard F. Lyon, John A. Davis, for defendant in error.

WALKER, J.

1. The Judge instructed the jury "that a decree is evidence of the recitals therein between the parties thereto as though they were contained in a deed, and binding on the parties in the same way; and when relied on as a link in a chain of title, it must be considered as though it were a deed." We see no error in this; it is substantially what is contained in Sec. 4119 of the Code. As there was no evidence showing any title in Rugg, either by possession or otherwise, we do not see that it was very material whether the record of the case of Bishop & Parsons vs. Rugg's administrator, was admitted or rejected.

2. The Court granted a new trial, on the ground that he omitted to charge what constitutes color of title and adverse possession under the act of 1852. Inasmuch as the Judge thought there should be a new trial, and we see no principle of law violated in so doing, and more especially as the testimony leaves some important points in doubt, which can be made clear on a new trial, we are not disposed to control the discretion as exercised in this case.

There are several points which need elucidation. The paper title is shown to be in Tift, and yet both sides attempt to derive title from Clayton. What interest in the premises he ever had does not appear. No deed is shown conveying title to him, nor does it appear from the record that he ever was in possession of the lot. We have already alluded to the fact that Rugg is not shown to have had any title at any time, and still it seems that stress was laid upon the record, introduced by plaintiff, of the case of Bishop & Parsons vs. Rugg's administrator. The deed made by the sheriff at the sale, in July, 1842, was made to Tift and not to Rugg. We do not see what the doctrine of possession under claim of right had to do with the case, because it appears that all who claimed the lot showed color of title.

It is uncertain in what character "Swinney went into possession of the lot directly after the great fire in 1849 or 1850." It was said in argument that at the time of the trial

he was intoxicated, and therefore was not introduced as a witness. By Swinney's agreement of January, 1851, he was the plaintiff's tenant; by his agreement in June, 1851, he recites that he was the tenant of defendant in 1850, and agreed so to continue. If in law he was the tenant of plaintiff in January, 1851, he could not by an attornment in June thereafter defeat the plaintiff's possession. Possibly he went into possession originally as a mere "squatter," and if so, his possession would be in subordination to the title of the true owner—Stamper vs. Griffin, 20th Ga. R., 234. Perhaps he went into possession as the tenant of Jackson, as he recites in the agreement of June, 1851; if so, then his subsequent attornment to Bishop & Parsons, in January, 1851, would not change the possession from Jackson to Bishop & Parsons. These suggestions are made for the purpose of showing the uncertainties hanging about the merits of this case, and as reasons why we should allow the re-hearing granted by the Court below. The testimony to remove the most of these doubts is attainable, and we hope will be produced on another trial. We presume the whole facts of the case, as they appeared in the Court below, are not embraced in the record, and that the omission of facts in the case does injustice both to the Court and the counsel. From the points made in the motion for a new trial, and the charges which the Judge certifies he gave, there must have been many facts before the Court below which do not appear in this record. Upon no other hypothesis would the conduct of either the Court or counsel be explicable. We affirm the judgment granting a new trial.

Judgment affirmed.